IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:   1:08cr10/RV/GRJ
                                                    1:12cv8/RV/GRJ

WILLIAM J. ERICKSON

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law, as corrected. (Docs. 665, 688.)  The Government has filed a response (Doc. 672) and Defendant has filed a reply. (Doc. 677.)  After a careful review of the record and the arguments presented, the Court concludes that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant was charged with four others with conspiracy to manufacture, distribute and possess with intent to manufacture and distribute more than one thousand marijuana plants ("Count One") and manufacturing and possessing with intent to distribute more than one thousand marijuana plants on a date certain ("Count Two"). (Doc. 179.)  Defendant was also charged with disposing of and hiding assets involved in a forfeiture proceeding ("Count Four").  Defendant was arrested and the court detained pending trial. (*See* Docs. 67, 140.)  Defendant retained Stephen N. Bernstein

to represent him, after Mr. Bernstein represented Defendant as CJA counsel for his detention hearing. (*See* Docs. 65, 81.)

The charges stemmed from an indoor marijuana grow operation that law enforcement discovered on property owned by co-defendant John Roger Sager, and cared for by two Guatemalan men, co-defendants Diego Choxj Cha and Francisco Sac. Defendant's wife Minerva Quintana was also alleged to have been involved.  The discovery of the first operation led law enforcement to three contiguous rural residential properties owned by Defendant Erickson or Erickson and Sager jointly, where they executed multiple search warrants, discovering marijuana plants and other evidence of cultivation activity.  While Defendant was detained pending trial, allegedly he had co-defendants Friske and Doreen Sager attempt to recover money and personal property from his residence, including a buried tube containing $375,000 in cash, which led to the charge contained in Count Four.  Defendant filed three motions to suppress, alleging that search warrants for the three separate locations contained misstatements of fact in the application and affidavits (Docs. 108–110), and moved to suppress evidence obtained during a warrantless search that took place prior to the issuance of a search warrant. (Doc. 142.)  The court denied the motions. (Docs. 124, 178.)

John Sager was a fugitive at the time of trial, and Francisco Sac entered a guilty plea.  Defendant Erickson and co-defendants Dennis Friske, Diego Choxj Cha (Lorenzo Sac), Doreen Sager and Minerva Quintana proceeded to trial.  The jury trial lasted five days.  At the close of the Government's case, the court granted judgments of acquittal as to Quintana, finding there was no evidence that she intended to join or associate

herself with the conspiracy, and as to Doreen Sager, finding there was no evidence that Sager took a substantial step toward obstruction of the forfeiture proceedings. (Doc. 475 at 108–109.)  Defendant presented no testimony or evidence other than a business record showing that he had a tree nursery. (Doc. 475 at 113.)  The jury found Defendant guilty of each charge, but by special verdict found that the offense conduct involved more than 100 marijuana plants but less than 1000 marijuana plants, which was significantly fewer than the Government had attempted to prove at trial. (Doc. 354.)

The Presentence Investigation Report ("PSR") was disclosed to the defense on August 4, 2009.  The Defendant was held accountable for marijuana plants found on both his and Sager's property for a total of 1,123 marijuana plants, yielding a base offense level of 26 (PSR ¶¶ 36, 107).[1]  After a two level adjustment for acceptance of responsibility, his total offense level was 28 (PSR ¶¶ 40, 44).  Defendant had only one prior conviction, and his criminal history was I (PSR ¶¶ 46, 47). The applicable advisory guidelines range was 78 to 97 months imprisonment (PSR ¶ 77).  Defendant objected to the quantity of marijuana attributed to him on the basis that the jury had acquitted him of conduct involving more than 1000 plants (doc. 387).  The court overruled the objection and sentenced Defendant to a term of 88 months imprisonment. (Docs. 438, 504 at 12.)

Defendant appealed both his conviction and sentence.  He raised three issues with respect to his conviction.  First, he argued that the district court erred in denying his motion for an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978) with

---

[1]The PSR is not part of the electronic record.

respect to his challenge to the three search warrants.  The Eleventh Circuit found that Defendant's attacks on the veracity of the affiants' statements were conclusory and unsupported and thus there was no error.  Defendant next contended that the district court erred in denying the motion to suppress the evidence that was the fruit of a warrantless entry into his property.  The Eleventh Circuit agreed with the trial court that officers' following up on their observation of items that were in plain view during their approach to Defendant's residence to conduct a "knock and talk" did not amount to a constitutional violation.  Finally, Defendant argued that the prosecutor engaged in misconduct by eliciting misleading testimony from one of its case agents, Agent Andrews, concerning Defendant's income and by offering conflicting testimony from two agents regarding where law enforcement found marijuana grow books on his property. The Eleventh Circuit found that Agent Andrews' testimony was not false, and that any discrepancy between the testimony regarding the location of the grow books was not material and did not undermine the court's confidence in the verdict.

With respect to Defendant's sentence, he argued that the court erred in holding him accountable for the 917 plants discovered at a property owned by co-defendant Sager.  Defendant maintained that these plants related to "acquitted conduct" and should have been excluded from his total responsibility.  The Eleventh Circuit found that consideration of these plants as part of the total of 1,123 plants was proper because they were "reasonably foreseeable" to Defendant as part of the jointly undertaken criminal activity.  Defendant's convictions and sentence were affirmed.  (Doc. 646.)

In the present motion, Defendant separates his claims into twelve grounds for relief, many of which are closely related and will be discussed concurrently.  The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### *Generally applicable legal standards*

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340,

1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, it cannot

be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343

(quotation omitted).  Broad discretion is afforded to a court's determination of whether a

particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16

(1963) ("identical grounds may often be proved by different factual allegations . . . or

supported by different legal arguments . . . or couched in different language . . . or vary

in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct

appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred.  Lynn,

365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v.

United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct

appeal when its merits can be reviewed without further factual development."  Lynn,

365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the

ground of error was unavailable on direct appeal, a court may not consider the ground

in a section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that

is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523

U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must

show that "some objective factor external to the defense prevented [him] or his counsel

from raising his claims on direct appeal and that this factor cannot be fairly attributable

to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); see also Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000)

(discussing presumption of reasonableness of counsel's conduct); <u>Lancaster v.
Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not
entitled to error-free representation").  Counsel's performance must be evaluated with a
high degree of deference and without the distorting effects of hindsight.  <u>Strickland</u>, 466
U.S. at 689.  To show counsel's performance was unreasonable, a defendant must
establish that "no competent counsel would have taken the action that his counsel did
take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations
omitted); <u>Chandler</u>, 218 F.3d at 1315.  When examining the performance of an
experienced trial counsel, the presumption that counsel's conduct was reasonable is
even stronger, because "[e]xperience is due some respect." <u>Chandler</u>, 218 F.3d at
1316 n.18.

 With regard to the prejudice requirement, defendant must establish that, but for
counsel's deficient performance, the outcome of the proceeding would have been
different. <u>Strickland</u>, 466 U.S. at 694.  For the court to focus merely on "outcome
determination," however, is insufficient; "[t]o set aside a conviction or sentence solely
because the outcome would have been different but for counsel's error may grant the
defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506
U.S. 364, 369–70 (1993); <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 611 F.3d 740, 754 (11th
Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious
as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart</u>, 506
U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687).  Or in the case of alleged sentencing
errors, a defendant must demonstrate that there is a reasonable probability that, but for

counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

### *Grounds One through Five*

Defendant contends in his first four grounds for relief that counsel was constitutionally ineffective for failing to address or object to various portions of the Government's closing argument.  He asserts that counsel failed to object to or correct the prosecutor's misquoting of witness testimony during his closing argument and rebuttal (ground one); failed to object to or correct the prosecutor's "vouching" for witnesses (ground two); failed to object to the prosecutor's misstatements of facts in evidence (ground three); and he failed to object to the prosecutor's use of "false and misleading" statements in both his opening statement and closing argument, in contravention to the Government's stipulation (ground four).  His fifth ground for relief is that counsel failed to raise any of these issues on appeal.

Vouching occurs when the jury could reasonably believe that the prosecutor was indicating a "personal belief" in the witness's credibility.  United States v. Lopez, 590 F.3d 1238, 1257 (11th Cir. 2009); *see also* United States v. Arias-Izquierdo, 449 F.3d 1168, 1177–78 (11th Cir. 2006); United States v. Cano, 289 F.3d 1354, 1365 (11th Cir. 2002) (quotations omitted); United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996); United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991); United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983).  The court must consider whether: (1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility; or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not presented to the jury supports the witness's testimony.  United States v. De La Cruz Suarez, 601 F.3d 1202 (11th Cir.

2010); Cano 289 F.3d at 1365.  A prosecutor is permitted to comment on the credibility

of a witness, often a key issue in a case, so long as she does not personally vouch for a

witness's credibility or bolster the witness's credibility through the reputation of the

government.  Lopez, 590 F.3d at 1257; United States v. Hernandez, 921 F.2d 1569,

1573 (11th Cir. 1991).  She may, for instance, argue that "the fair inference from the

facts presented is that a witness had no reason to lie."  Hernandez, 921 F.2d at 1573

(quoting United States v. Eley, 723 F.2d 1522, 1526 (11th Cir. 1984) (quoting United

States v. Bright, 630 F.2d 804, 824 (5th Cir. 1980))).  The Government is also entitled

to rehabilitate its witness after an attack on the witness's credibility.  See Cano, 289

F.3d at 1366; Eley, 723 F.2d at 1526; United States v. Cotton, 631 F.2d 63, 66 (5th Cir.

1980) (because defense counsel referred to government witnesses as liars in closing

arguments, government was within its right to attempt to rebut these assertions).

Context is important.  See Cano, 289 F.3d at 1366; Cotton, 631 F.2d at 66.  Therefore,

it is important to take the remarks singled out by Defendant in context.

Allegations of prosecutorial misconduct must be considered in the context of the

entire trial, along with any curative instruction. Lopez, 590 F.3d at 1256 (citing United

States v. Bailey, 123 F.3d 1381, 1400 (11th Cir.1997)). "Because statements and

arguments of counsel are not evidence, improper statements can be rectified by the

district court's instruction to the jury that only the evidence in the case be considered."

Id. (quoting United States v. Smith, 918 F.2d 1551, 1562 (11th Cir.1990)).

The Court has reviewed the transcripts of the trial, including the opening

statements and closing arguments.  No constitutional deficiencies in defense counsel's

performance are apparent.  The court's instructions to the jury expressly included the admonition that anything the lawyers say is not evidence in the case and it is the individual jurors' own recollection and interpretation of the evidence that controls. (Doc. 517 at 96.)[2]  The issues to which Defendant claims counsel should have objected were adequately and specifically covered in defense counsel's own closing argument (*id*. at 25–38.)

Additionally, defense counsel himself admitted that the evidence was clear that his client was involved in misconduct involving 203 plants with respect to Counts One and Two. (*id*. at 37.)  This presumably was a strategic decision that allowed counsel to contest the higher quantity of plants alleged by the Government without losing credibility with the jury.  Counsel's fair and strong closing argument resulted in the jury attributing far fewer plants to Defendant's offense conduct than the Government had sought to prove.  Any alleged vouching or misstatement of the evidence, taken in the context of the entire case, therefore, had no demonstrable impact on the outcome of Defendant's case.  *See* Lopez,  590 F.3d at 1257 (11th Cir. 2009).  Defendant has not shown prejudice and he is not entitled to relief on these claims.  Furthermore, because the issues were not meritorious, appellate counsel was not constitutionally ineffective for his failure to raise them on appeal.  *See* Brown v. United States, 720 F.3d 1316, 1335

---

[2]The jury is presumed to have followed the judge's instructions.   Richardson v. Marsh, 481 U.S. 200, 211 (1987); Hallford v. Culliver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Calderon, 127 F.3d 1314, 1334 (11th Cir. 1997);  *see also* United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").

(11th Cir. 2013);  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing

Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).

### Grounds Six and Seven

Defendant asserts that counsel was ineffective because he failed to properly

investigate and challenge the search warrants (Doc. 665, exhs. B-2–B-4), and that

counsel was constitutionally ineffective for his failure to raise this issue on appeal.  The

vast majority of Defendant's arguments assailing the validity of the search warrants

were offered already by counsel in his initial motions to suppress and addressed by the

court in its orders denying same. (See Docs. 108–110, 124.)  Although Defendant faults

counsel for not presenting an affidavit from co-defendant Francisco Sac, Defendant

also has not presented this or other evidence in support of his claim. See Franks, 438

U.S. at 171.  Defendant's undated and unsworn correspondence to counsel and others

carries no evidentiary weight (e.g. Doc. 665, exhs. B-9–B-16.)  Defendant's desire for

an evidentiary hearing on his motion to suppress appears to have been precipitated, in

large degree, on his wish to cross-examine certain witnesses. (See, e.g. Doc. 665 at

64–65.)  A mere desire, however, to engage in such cross-examination is an insufficient

basis for a hearing under Franks.  See Franks, 438 U.S. at 171.

In support of his argument for suppression, Defendant cites United States v.

Hambelton, Case No. 1:08cr26/SPM,  a case involving somewhat similar factual

circumstances, which also was pending before District Judge Stephan Mickle. In

Hambelton, law enforcement's entry onto gated rural property was found to be improper

and defendant's motion to suppress was granted, resulting in the dismissal of his case.

Defendant concedes, however, that after he told counsel about the case, counsel

contacted the attorney for Mr. Hambelton and ascertained that there were important

factual differences between the two cases, notably that Mr. Hambelton had given

consent to a search after agents climbed over a locked gate to enter his property.  In

contrast, in the instant case, there was no consent, and agents did not need to scale a

locked gate to approach Defendant's house.  Because motions to suppress are highly

fact-specific, the district court's opinion in Hambelton was not dispositive of the situation

presented in Defendant's case and certainly did not provide any basis under principles

of *stare decisis* to alter the Court's ruling in this case on the motions to suppress.

Accordingly, counsel was not constitutionally ineffective for failing to argue the

Hambelton case, particularly in light of his having first discussed the issue with the

attorney who represented Mr. Hambelton.

Finally, with respect to Defendant's appellate claim, as was noted *supra*, the

Eleventh Circuit rejected Defendant's claim that the district court erred in denying his

motion for a Franks hearing, finding that his attacks on the veracity of the affiants'

statements were conclusory and unsupported.  Defendant, therefore, has not shown his

entitlement to relief on either of these two grounds.

### Ground Eight

Defendant's eighth ground for relief includes several assertions of error.  He

claims that counsel was constitutionally ineffective for failing to raise government

misconduct at trial.  Specifically, he asserts that counsel failed to cross examine a

government agent who testified falsely.  Defendant maintains that Agent Andrews

falsely led first the grand jury and then the petit jury in his case to believe that law enforcement had discovered no source of legitimate income.  The veracity of Andrews' testimony was addressed on appeal, and the Eleventh Circuit expressly held that Andrews' testimony concerning the Florida Department of Revenue records was not false. (Doc. 646 at 17.)  Furthermore, Defendant's attorney noted the existence of Internal Revenue Service Records and the Government's failure to address them in his closing argument. (Doc. 517 at 27, 33.)  It is quite possible that the tax returns in question could have harmed rather than helped Defendant's case, as they reflected business income of less than $7000 per year (*See* Doc. 665, exh. B-17) and, thus, would not have assisted in explaining how Defendant was in possession of $375,000.00 cash recovered from Defendant's property.  In any event, the existence of "legitimate" income was unlikely to have affected the jury's verdict, given that, in convicting Defendant, the jury seemingly focused on only the plants that were actually observed on and recovered from his property after law enforcement's attempt to conduct a "knock and talk."  *See* United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006).  An acquittal, obviously, would have required the jury to ignore the presence of these plants, and counsel's strategic concession.

Defendant also maintains that counsel failed to provide the appellate court with an accurate and inclusive brief and failed to raise pertinent issues as Defendant requested.  As evidence of this, Defendant submits copies of letters that he purportedly sent to counsel in which he identified issues that he believed would be meritorious appellate issues. (Doc. 665, exhs. B-14, B-15, B-18.)

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.  Evitts v. Lucey, 469 U.S. 387, 396 (1985).  However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.  Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–127 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.  Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); see also Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing Smith).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Barnes, 463 U.S. at 751–52.  In fact, this is the "hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986).  The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective.  Id.; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (citing Heath).  In short, Defendant's disagreement with counsel's choice of

which issues to present on appeal is insufficient to warrant a finding that counsel was constitutionally ineffective.

### Ground Nine

Defendant claims that counsel not only failed to mount any defense in his behalf, but also "testified against" Defendant when he admitted Defendant's responsibility for the 203 marijuana plants found on Defendant's property in his closing argument. Defendant offers several arguments that he claims might have planted a seed of doubt in the jury's mind to establish that someone other than Defendant was responsible for the marijuana, and maintains that it was counsel's admission during closing which caused the jury to convict him.

The Government characterizes Defendant's argument as merely a challenge to counsel's trial strategy and responds that Defendant has not shown that the defense was so patently unreasonable that no competent attorney would have chosen it. The Government points out that Defendant's argument ignores the evidence against him including the seized plants, the tire tracks between the properties, the $375,000 in cash recovered from Defendant's property and "incriminating jailhouse testimony." Although the Government has not offered an affidavit from defense counsel (which could have confirmed counsel's strategic thought process) the Court, nonetheless, concludes that it is not unreasonable to surmise that counsel was trying to curry favor with the jury by not frivolously denying Defendant's responsibility for marijuana plants found on his property, and instead distancing his client from involvement in a much larger conspiracy, which would produce greater sentencing exposure. Such a strategy was

not unreasonable given the record evidence against his client, and Defendant is not
entitled to relief on this ground.

### Ground Ten

Defendant next faults counsel for his failure to object to the Government's use of
prejudicial testimony from co-defendant Cha's jailhouse "character witness" against
him.  Defendant asserts that counsel should have objected or moved for a mistrial.

Carlos Correa, who had testified in behalf of Cha at a pretrial hearing some
months earlier, was called as a character witness of sorts by co-defendant Cha at trial.
(Doc. 475 at 173 et seq.)  Correa testified that he previously had shared a jail cell with
Cha, who was crying frequently and having difficulties communicating as Cha did not
speak either English or Spanish as his first language, but a Guatemalan Indian dialect.
Correa was able to have minimal communication with Cha in Spanish.  Cha's attorney
asked Correa what Cha had told Correa about his knowledge of the marijuana growing
operation.  The Government's objection that the question called for self-serving hearsay
was overruled, and Correa explained that Cha had told him that Cha did not understand
why he was in jail because he did not understand that the plants he was caring for were
illegal.  Correa further stated that Cha did not understand things that a "normal person
in the United States would understand." (Doc. 475 at 173–179.)  On re-direct
examination Correa explained that he had asked to testify in Cha's behalf in this case
because he felt badly for him, even though, as a result of his testimony Correa was at
risk that he would "not get any favors from the Government." (Doc. 475 at 183–84.)

On cross-examination Correa provided the testimony about which Defendant complains.  Correa related that he had told Cha that Cha's story reminded him of a story Correa had heard when talking to someone else.  The Government asked who the other person was, at which point Defendant's attorney objected that the question was outside the scope of direct.  The court overruled the objection, and Correa responded that the person to whom he referred was Defendant Erickson, whom he had briefly met during custodial transport.  Correa testified that Cha did not understand that there was a marijuana "operation," but only thought that Cha was making money to send home to Guatemala.  The Government's questions appeared to vacillate between what Cha had told Correa and what Defendant Erickson had told Correa.  The Government asked whether Defendant had told Correa about a barn, shed or big garage, and the defense unsuccessfully objected that the question was leading and outside the scope of direct examination.  The essence of Correa's testimony about Defendant was that Defendant told him that John Sager had picked up some "naive immigrants" to work for him on his property with the marijuana, and that Defendant did not really know what was going on at Sager's house but he blamed Sager for dragging him into a bad situation.  (Doc. 475 at 179–183.)

The Government mentioned Correa's testimony during its closing argument to support its theory that there was a link between Defendant and John Sager as well as Sac. (*See* Doc. 517 at 9, 21, 76, 82, 87.)  Defendant, however, overstates the emphasis the Government placed on Correa's testimony as the Government's arguments with respect to Correa were by no means a focal point of either its closing argument or its

rebuttal argument.  Thus, there was no legal basis for counsel to raise any additional objection, and the Government is not prohibited from capitalizing on the testimony of a defense witness in an attempt to buttress its case.  Counsel, therefore, was not constitutionally ineffective.

   *Ground Eleven*

   Defendant asserts that his attorney's performance was constitutionally deficient with respect to counsel's failure to challenge the Government's "use and misuse" of jail telephone security recordings.  Defendant complains that the Government played just small snippets of the conversations for the jury and then offered "opinion testimony" as to what Defendant was discussing.  He states that counsel should have challenged the use of the tapes, or insisted that they be played in their entirety, or offered his own transcripts to the jury and then raised this issue on appeal.  Notably, however, although Defendant maintains that the jury's hearing these partial taped conversations led to his conviction at trial, he fails to identify any portions of the conversations that would have been exculpatory or that could have negated the fact that marijuana plants were found on his property.  Defendant stipulated that the call recordings from Alachua County jail were made by him. (Doc. 672, ex. E.)  Agent Riley testified about his review of the calls and was on the stand while the phone conversations were played for the jury. (Doc. 474 at 167–188, doc. 475 at 6–12.)  It was not unconstitutional for the Government to obtain copies of the tapes of Defendant's jailhouse telephone conversations and to introduce them at trial.  *See*, *e.g.*, United States v. Riley, 434 Fed. App'x 818 (11th Cir. 2011); United States v. Harris, 338 Fed. App'x 892 (11th Cir. 2009). Accordingly,  Defendant

has not shown that counsel was constitutionally ineffective for failing to pose any additional objections.

Defendant also claims that he was denied "equal treatment" in that he was held as a pre-trial detainee and not afforded the same due process as one who is free on bond.  The difficulties Defendant may have faced while attempting to assist his attorney in preparing for trial due to his detention or the fact that Defendant's phone calls were monitored, leading to the discovery of potentially incriminating evidence does not make Defendant's pre-trial detention unlawful.  Despite the fact that they have not yet been convicted, pre-trial detainees enjoy diminished expectations of privacy after commitment to custodial facilities.  *See* Bell v. Wolfish, 441 U.S. 520 (1979).  In any event, the issue of Defendant's pre-trial detention and the denial of a bond are not proper issues for § 2255 relief.

### *Ground Twelve*

In Defendant's final ground for relief he again raises multiple failings of counsel. He asserts that counsel should have raised pre-trial Franks issues, that counsel failed to object or request a mistrial when it became apparent at trial that agents had monitored his mail to help in their investigation, and counsel failed to raise these issues on appeal.  Defendant appears to contend that the Government monitored Defendant's mail in an effort to obtain information that would help it secure a second search warrant for his property, and that counsel should have filed a motion to suppress on this basis.

The Government maintains that there is no factual support for Defendant's claim that agents had monitored his mail, and that the correspondence in question was

seized from the recipient, co-defendant Friske.  Defendant insists that Agent Riley gave

inconsistent testimony about this issue before the grand and petit jury, in that, contrary

to his testimony at trial, Riley told the grand jury that law enforcement had monitored

Defendant's correspondence. (*See* doc. 474 at 173, doc. 475 at 15–16.)  Defendant

also suggests that the letters were not seized from Friske until after the execution of the

first search warrant and therefore Riley could not have known about them when he

testified before the grand jury.  However, when counsel confronted Agent Riley with this

inconsistency at trial, Riley explained that he had testified several times before the

grand jury about this case.  Riley noted that the testimony in question was given on

October 28, 2008, after the execution of the first search warrant, and twelve days after

law enforcement had recovered from Friske's vehicle the correspondence Defendant

had sent to co-defendant Friske.  Riley further clarified that he understood counsel's

previous question about the mail to be whether he was "actively monitoring

[Defendant's] jail letters as [Defendant] was sending them in real time" and that his

answer to that question was no, because he was not. (Doc. 475 at 17.)  Defendant's

assertion that the testimony proves the contrary is without foundation and does not

entitle him to § 2255 relief.

### *Cumulative Error*

In each of his grounds for relief, Defendant asserts a claim of cumulative error.  It

is true that the cumulative effect of several errors that are harmless by themselves

could so prejudice a defendant's right to a fair trial that a new trial might be necessary

even if the errors considered individually are non-reversible. *See, e.g.*, U.S. v. Ramirez,

426 F.3d 1344, 1353 (11th Cir. 2005);  United State v. Preciado-Cordobas, 981 F.2d

1206, 1215 n.8 (11th Cir. 1993)(citing United States v. Pearson, 746 F.2d 787, 796

(11th Cir. 1984)); United States v. Adams, 74 F.3d 1093,1099 (11th Cir. 1996); United

States v. Thomas, 62 F.3d 1332, 1343 (11th Cir. 1995).  However, "[a] defendant is

entitled to a fair trial not a perfect one."  Ramirez, 426 F.3d at 1353 (quoting United

States v. Adams, 74 F.3d 1093, 1099– 1100 (11th Cir. 1996) (citing Lutwak v. United

States, 344 U.S. 604, 619, 73 S. Ct. 481, 490, 97 L. Ed. 593 (1953))).  Notably,

however, the cumulative error doctrine is inapplicable, as here, where the district court

commits no individual errors.  United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir.

2004); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful

errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn,

808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-

meritorious claims raised will not support a finding of cumulative error because "Twenty

times zero equals zero."). The Supreme Court has not recognized the cumulative error

doctrine in the context of ineffective assistance of counsel claims.[3]  Thus, having found

no error, there can be no cumulative error, and Defendant is not entitled to relief.

---

[3] The Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel."  Forrest v. Fla. Dep't of Corr., 342 Fed. App'x 560, 565 (11th  Cir. 2009).  The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  Id. (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

**Conclusion**

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (Doc. 665) should be

**DENIED**.

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 8th  day of September, 2014.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge



**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).